UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RICHARD ORBAN and JANET ORBAN,    )
                                  )
            Plaintiffs,           )
                                  )
      v.                          )    CASE NO. 1:01-cv-1013-DFH-TAB
                                  )
CITY  OF WARSAW, INDIANA, R. PAUL )
SCHMITT, RICK M. ALBRECHT,        )
DAVID A. MELCHING, and D.A.       )
MELCHING & ASSOCIATES, INC.,      )
                                  )
            Defendants.           )

ENTRY ON PLAINTIFFS' MOTION TO ENTER FINAL JUDGMENT AND
DEFENDANTS' MOTION TO TRANSFER VENUE

For reasons explained below, the court denies defendants' motion to transfer

venue and grants in part and denies in part plaintiffs' motion to enter final

judgment in their favor and against defendants R. Paul Schmitt and the City of

Warsaw based on the results of a trial of the same events in state court.

This case illustrates some of the procedural tangles that could arise before

the Supreme Court's decision in *Lapides v. Board of Regents of University System

of Georgia*, 535 U.S. 613, 616 (2002), when a person claimed that both State and

local government agents conspired together to violate his rights under both federal

and state law.  The combination of the local defendants' removal of this action to

federal court and the State defendants' assertion of the State's Eleventh

Amendment immunity, aggravated by an unfortunate ambiguity in this court's

pre-*Lapides* order of partial remand, has produced a confusing debate that has little to do with the merits of the underlying claims.  The court hopes that this case, as a result of the *Lapides* decision after this court's partial remand, presents a question of last impression.  *Lapides* held that when a State consents to removal of a case to federal court, it waives its Eleventh Amendment immunity to the exercise of federal jurisdiction.

### *Factual and Procedural Background*

Plaintiffs Richard and Janet Orban first filed this action on June 13, 2001 in the Marion Superior Court (Cause No. 49D02-0106-CT-900).  They named as defendants the State of Indiana, the Indiana Department of Revenue, Rick M. Albrecht (a Special Agent for the Indiana Department of Revenue), the City of Warsaw, Indiana, R. Paul Schmitt (a Detective Sergeant in the Warsaw Police Department), David A. Melching, a former business partner of plaintiffs, and his company, D.A. Melching & Associates, Inc.  The Orbans alleged that Melching stole money from them and then accused the Orbans of wrongdoing to avoid exposure of his own theft.  Based on Melching's accusations, the City of Warsaw Police and the Indiana Department of Revenue investigated the Orbans.  During the investigation, Melching, Albrecht, and Schmitt allegedly took illegal actions including destroying exculpatory evidence, barring the Orbans from entering their business, seizing their personal belongings, and arresting them.

The Orbans' state court complaint included seven claims.  The claims did not always spell out whether they arose under federal law, state law, or both. Count Five, which is central to this case, alleged that defendants Albrecht (of the state agency), Schmitt (of the local police), and Melching (a private individual) conspired to commit each of the many wrongs set out in the complaint.  Count One, asserted under 42 U.S.C. § 1983, alleged that all the defendants violated the Orbans' rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by making false statements to the State prosecutor and by withholding and destroying exculpatory evidence.  Count One also alleged the state law tort of malicious prosecution.  Count Two alleged that Albrecht and Schmitt committed criminal conversion, seeking relief under Ind. Code § 34-24-3-1.  Count Three alleged that Albrecht, Schmitt, and Melching destroyed evidence relevant to the criminal investigation.  Count Four alleged that Albrecht, Schmitt, and Melching slandered Richard Orban.  Count Six alleged that Melching and his company converted property of Carpet Express, LLP.  Count Seven alleged that Melching committed the tort of abuse of process.

The City of Warsaw ("the City") and Detective Schmitt removed the action to this federal court and immediately moved for a change of venue to the Northern District of Indiana.  The removal petition relied upon federal question jurisdiction and 28 U.S.C. § 1441.  Plaintiffs opposed the motion to transfer and then, on August 10, 2001, moved to remand the action to state court.  The motion to remand argued that the Eleventh Amendment to the United States Constitution

barred this court from exercising jurisdiction over all claims against the State of Indiana and its Department of Revenue.  The motion to remand relied on Seventh Circuit precedents holding that such barred claims prevented removal of the entire case.  See *Frances J. v. Wright*, 19 F.3d 337, 340 (7th Cir. 1994), overruled in part, *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 385-86 (1998).  While the motion to remand was pending, the State of Indiana, its Department of Revenue, and Albrecht, an Indiana employee, filed an answer asserting their Eleventh Amendment immunity to the exercise of federal jurisdiction.[1]

On October 16, 2001, relying on the Supreme Court's decision in *Schacht*, this court held that removal had been proper but that certain claims would need to be remanded to state court.  This court also stayed this federal court action pending resolution of the state court action.  The relevant section of the remand order stated:

> Plaintiffs' motion to remand is granted in part, to the extent that all federal claims against the State of Indiana and against state officials in their official capacities and all claims arising under state law are hereby remanded to the Marion Superior Court.  Plaintiffs' claims arising under federal law against defendants City of Warsaw, Schmitt, David A. Melching, and D.A. Melching & Associates, Inc. remain pending in this court.
>
> With this resolution of the motion to remand, it is clear that the center of gravity in this dispute will be in the state courts.  Accordingly,

---

[1]The motion to remand did not assert as a defect in the removal the fact that the State defendants apparently did not join in the removal.  See *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 393 (1998) (Kennedy, J., concurring) (arguing for result the Court later adopted in *Lapides*).  The court also did not raise this apparent procedural defect in the removal.

action on the federal claims that remain pending before this court is hereby stayed.

The court's remand and stay order also indicated that any party could move to lift the stay at any time if circumstances should warrant or if the party wished to be heard further on the subject.   The remand and stay order was silent, unfortunately, about federal claims against state employee Albrecht in his individual capacity.  The Eleventh Amendment would not bar the federal courts from hearing those claims.  The remand and stay order also did not give more specific guidance about how to handle the conspiracy claim, which included both federal and state law claims against all defendants.

The case proceeded in the state court.  Melching and his company never appeared, and the state court entered a default judgment for $3,275,000.  See Pl. Reply Br., Ex. B at 4 (Statement of Case from defendants' state court appellate brief).  In 2004, the plaintiffs stipulated to dismissal of their federal claims against the State of Indiana and the Department of Revenue, and the City of Warsaw, as well as their claims for slander.  *Id.*  The state court denied summary judgment on all other claims.   Plaintiffs eventually withdrew their claims for malicious prosecution under state law.  *Id.* at 5.

Before the trial in the state court, the plaintiffs and defendants Schmitt and the City all argued that the court should try separately the claims against the State defendants and the claims against Schmitt and the City.   The State defendants opposed severance, and Judge Johnson denied the request for two

separate trials.  It appears that shortly before the state court trial, Schmitt and the City raised some objection to the state court's jurisdiction over at least some claims against them.  Judge Johnson tried to persuade them voluntarily to agree to try the entire dispute in state court.  Pl. Reply Br., Ex. C at 31.  They declined to do so.  They also declined his invitation to seek guidance from this court about the precise scope of the remand order.  *Id.*

Judge Johnson went forward with the trial of all remaining state law claims, including those within the scope of the conspiracy count, and the Section 1983 claim against state employee Albrecht in his individual capacity.  Judge Johnson also reasoned that the conspiracy count against Schmitt, Melching, and Albrecht was indivisible and that he had jurisdiction to try the entire count.

On June 29, 2006, the Marion Superior Court trial concluded.  The jury verdict found that (1) Albrecht violated the Orbans' federal constitutional rights, with damages of $1,575,000; and (2) Albrecht, Schmitt, and Melching conspired to violate the Orbans' constitutional rights.  On June 29, 2006, Judge Johnson entered "Judgment on the Verdict," which stated in relevant part:

> It is therefore ordered, adjudged and decreed by the Court that judgment is entered for the Plaintiffs, Richard Orban and Janet Orban, and against the Defendant, Rick M. Albrecht, in the amount of One Million, Five Hundred Seventy-Five Thousand Dollars ($1,575,000).
>
> It is further ordered, adjudged and decreed by the Court that judgment is entered for the Plaintiffs, Richard Orban and Janet Orban, and against the Defendants, Rick M. Albrecht and R. Paul Schmitt, on the count for Conspiracy to Violated [sic] Constitutional Rights.

On October 27, 2006, Judge Johnson entered his "Order on Attorney Fees,"

which stated in relevant part:

> 8. . . . the Court FINDS that Plaintiffs are entitled to recover the total sum of Six Hundred Eighty-Five Thousand Dollars ($685,000) in litigation costs and expenses, including attorney fees, pursuant to 42 U.S.C.A. § 1988, in this matter.
>
> 9. Because of the partial remand of this matter from federal court, and this Court's determination of the scope of its jurisdiction as a result of Judge Hamilton's partial remand order, the entry of this award of $685,000 in litigation costs and fees pursuant to 42 U.S.C.A. § 1988 is entered in this Court only against the Defendant Albrecht.
>
> 10. This Court has concluded that the scope of its jurisdiction pursuant to Judge Hamilton's remand order would relegate the determination and entry of attorney fees and costs against Defendants R. Paul Schmitt and/or City of Warsaw to the jurisdiction of federal court, and for that reason no judgment for attorney fees and costs under 42 U.S.C.A. § 1988 is entered at this time against either the City of Warsaw or R. Paul Schmitt.
>
> 11. By entering no monetary judgment against the City of Warsaw and/or R. Paul Schmitt under 42 U.S.C.A. § 1988 at this time, this Court does not determine that the City of Warsaw and/or R. Paul Schmitt are not liable for attorney fees and litigation costs pursuant to 42 U.S.C.A. § 1988, but this Court is only concluding that the scope of Judge Hamilton's remand order makes the entry of an attorney fee and costs award pursuant to 42 U.S.C.A. § 1988 against the City of Warsaw and/or R. Paul Schmitt a matter within the jurisdiction of the federal court, to be determined at the appropriate time in that venue.
>
> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment be entered in favor of the Plaintiffs and against the Defendant Rick M. Albrecht only in the amount of Six Hundred Eighty-Five Thousand Dollars ($685,000) pursuant to 42 U.S.C.A. § 1988, and judgment is so entered.

Thus, Judge Johnson did not enter a judgment against defendants City of

Warsaw and Schmitt because he concluded that duty was properly under the

jurisdiction of this court.  The judgments in the state trial court are currently on appeal to the Indiana Court of Appeals.  In January 2007, plaintiffs filed their pending motion, based on doctrines of *res judicata* and collateral estoppel, asking this court to enter judgment on the stayed federal claims consistent with the Marion Superior Court findings.  Defendants Schmitt and the City argue that these doctrines should not apply, and they have renewed their 2001 motion for transfer to the Northern District of Indiana.

*Discussion*

I.    *Venue*

As an initial matter, the court must address defendants' renewed motion to transfer venue to the South Bend Division of the Northern District of Indiana pursuant to 28 U.S.C. § 1404(a) based on convenience of the parties and witnesses.  The defendants have the burden of proving that the Northern District is "clearly more convenient" than the Southern District of Indiana.  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

For several reasons, defendants have not met this burden.  First, "the effect of a transfer cannot be a mere shift of inconveniences" among the parties. *Moore v. AT&T Latin America Corp.*, 177 F. Supp. 2d 785, 789 (N.D. Ill. 2001), citing *Promatek Med. Sys., Inc. v. Ergometrics, Inc.*, 1990 WL 19491, at *4 (N.D. Ill. Feb. 15, 1990).  Merely making the litigation more convenient for one side is not

a sufficient reason to transfer an action.  In this case, South Bend would be more convenient according to the defendants and less convenient according to the plaintiffs.  At the time plaintiffs filed the action, originally in the Marion Superior Court in Indianapolis, defendants the State of Indiana, the Indiana Department of Revenue, and Albrecht were all located in Indianapolis and were represented by the Attorney General, also located in Indianapolis.  There was no persuasive reason to transfer the case to the Northern District in 2001.

In 2006 and 2007, the situation has changed but there still is no compelling reason to transfer the action that was properly filed in Indianapolis.  The State of Indiana, the Indiana Department of Revenue, and Albrecht are no longer parties in this court, but Albrecht would be a key non-party witness if the action were to be tried again.  There are other witnesses in both forums.  The drive from Warsaw to Indianapolis is longer than from Warsaw to South Bend, but the difference is not unduly burdensome.  Plaintiffs' counsel practices in Indianapolis, and the case was properly started in the Marion Superior Court and properly removed to this district.  South Bend is not a clearly more logical forum for this action.

Second, when considering a motion under § 1404(a), the court is especially concerned with availability of non-party witnesses.  One aim is to limit the risk of "trial by deposition."  See, *e.g.*, *Volkswagen Aktiengesellschaft v. West Coast Metric, Inc.*, 2004 WL 392942, *2 (S.D. Ind. Feb. 12, 2004); *Volkswagen Aktiengesellschaft v. Dee Engineering, Inc.*, 2003 WL 1089515, at *4 (S.D. Ind.

March 4, 2003); *Kendall U.S.A., Inc. v. Central Printing Co.*, 666 F. Supp. 1264, 1268 (N.D. Ind. 1987); *Preston v. Missouri-Nebraska Exp., Inc.*, 1991 WL 626751, at *2 (W.D. Mo. Oct. 16, 1991).  Agent Albrecht, who is no longer a defendant in this court, would be a key witness.  He lives in Indianapolis, more than 100 miles from the federal courthouse in South Bend, and thus beyond the reach of a trial subpoena if the case were transferred.

For the foregoing reasons, if the case needs to be re-tried in whole or in part in federal court, transfer would not be appropriate.  If the case need not be re-tried in federal court, as the court holds below, it is appropriate for this court to use its familiarity with the facts and the complex procedural issues surrounding this case.  In either event, judicial economy and the interests of justice favor having this court continue to preside over this action.  Defendants' renewed motion to transfer venue is therefore denied.

II.    *The Effect of the Marion Superior Court Verdicts*

The Orbans request this court to give preclusive effect to the Marion Superior Court's findings that (1) Schmitt conspired with Melching and Albrecht to violate plaintiffs' constitutional rights, so that Schmitt and the City are jointly and severally liable for the resulting damages; (2) the amount of damages is $1,575,000; and (3) plaintiffs are entitled to attorney fees and litigation costs in the amount of $685,000.

The two doctrines of claim and issue preclusion protect "litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979).  *Res judicata,* also called claim preclusion, treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action. Collateral estoppel, also known as issue preclusion, recognizes that decisions about particular issues of fact or law in one action may conclusively resolve those issues for purposes of other actions.

"Under Indiana law there are four basic elements of *res judicata*:  (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the matter at issue was, or might have been, determined in the former suit; (3) the controversy adjudicated in the former suit was between parties to the present suit; and (4) the judgment in the former suit was rendered on the merits." *Leal v. Krajewski*, 803 F.2d 332, 334-35 (7th Cir. 1986).[2]

---

[2]The City and Schmitt concede that the state court decision was on the merits.  Under Indiana law, if "the case is brought to an issue, heard on evidence submitted pro and con, and decided by the verdict of a jury or the findings of a court, the judgment rendered is on the merits." *Creech v. Walkerton*, 472 N.E.2d 226, 228 (Ind. App. 1984), quoting 46 Am. Jur. 2d, *Judgments* § 478 (1969).  The defendants also do not challenge the identity of claims.  To determine identity of claims for purposes of preclusion, "the inquiry under Indiana law is essentially whether the two suits deal with a common transaction or occurrence." *Xantech Corp. v. Ramco Indus.*, 159 F.3d 1089, 1093 (7th Cir. 1998).  Matters where "the same evidence will support the issues involved in both actions . . . are deemed precluded." *Wabash Valley Power Ass'n v. Rural Electrification Admin.*, 903 F.2d 445, 456 (7th Cir. 1990), citing *M.R. v. Meltzer*, 487 N.E.2d 836, 841 (Ind. App. (continued...)

Under Indiana law, issue preclusion based on collateral estoppel requires three elements:  "(1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of issues; and (3) the party to be estopped was a party or the privity of a party in the prior action."  *Infectious Disease of Indianapolis, P.S.C. v. Toney,* 771 N.E.2d 1224, 1228 (Ind. App. 2002).  "In determining whether the use of collateral estoppel is appropriate, the court must consider whether the party against whom the judgment is pled has had a full and fair opportunity to litigate the issue and whether, under the circumstances, it would be otherwise unfair to permit the use of collateral estoppel."  *Id.*; see also *Wolverine Mut. Ins. v. Vance*, 325 F.3d 939, 943 (7th Cir. 2003) (applying Indiana law, collateral estoppel "only precludes a party from relitigating those issues already litigated and decided," and trial courts must consider both "whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances of the particular case").[3]

A.    *Effect of Pending Appeal*

Defendants Schmitt and the City argue that the doctrines of claim and issue preclusion should not apply because the Marion Superior Court judgment has been appealed.  Indiana law, however, does not require that the parties have

---

(...continued)
1986); *Biggs v. Marsh,* 446 N.E.2d 977, 982 (Ind. App. 1983).
        [3]The City and Schmitt do not challenge the identity of the issues or that the judgment was decided on the merits.

completed the appeals process before the decision has preclusive effect. *Starzenski v. City of Elkhart*, 87 F.3d 872, 877-78 (7th Cir. 1996). *Starzenski* holds that state law governs whether judgments pending appeal are preclusive, and "Indiana law provides that a pending appeal does not undermine the force of a judgment." *Id.* at 878. Instead, the judgment is "binding on the parties as to every question decided." *Id.*, citing *Pollard v. Superior Court of Marion County*, 122 N.E.2d 612, 617-18 (Ind. 1954); *Jones v. American Family Mutual Ins. Co.*, 489 N.E.2d 160, 166 (Ind. App. 1986); and *Daugherty v. Daugherty*, 83 N.E.2d 485, 486 (Ind. App. 1949). If the state court judgment is later vacated or modified, it would then lose its preclusive effect.

### B.    *The State Court's Jurisdiction*

Defendants Schmitt and the City further argue that this court is not bound by the Marion Superior Court's findings because the state court lacked jurisdiction over the matters tried to it. A judgment rendered without jurisdiction has no preclusive effect. Schmitt and the City also argue that the identities of the parties before the Marion Superior Court and this court are not actually the same because Schmitt and the City did not fully participate in the litigation of the issues in state court. The court holds that the required elements of *res judicata* and collateral estoppel are met and that the parties are bound by the Marion Superior Court findings, so far as they went. The Marion Superior Court properly exercised jurisdiction over the entire indivisible conspiracy claim. Even if there were a problem, moreover, Schmitt and the City waived any objection to having the

federal dimensions of that conspiracy claim tried in the state court by failing to take any of several available steps to resolve the issue before the trial in the state court.

This court's remand order remanded "all federal claims against the State of Indiana and against state officials in their official capacities and all claims arising under state law" while retaining jurisdiction over "all claims arising under federal law against defendants City of Warsaw, Schmitt, David A. Melching, and D.A. Melching & Associates, Inc."  Unfortunately, the remand order did not provide more specific direction as to how to approach the conspiracy claim in Count Five.

Count Five alleged in its entirety:  "Albrecht, Schmitt and Melching conspired together, and with other individuals known and unknown to the Orbans, to commit each of the wrongs set out in this complaint."  Complaint ¶ 106.  When this broad allegation is read in the context of the entire complaint, it encompasses claims arising under both federal and state law, and claims against all of the defendants, both individuals and governmental entities.  The remand order thus necessarily remanded this broad conspiracy claim against the State of Indiana and the Indiana Department of Revenue, including claims arising under *both state and federal law*, based on the alleged participation of Albrecht in the conspiracy.

The issue now is whether this court and the state court were required to divide the broad conspiracy claim into parallel state and federal claims and then further divide the federal claims against different defendants.  Schmitt and the City have not offered this court any persuasive reason that would require the broad conspiracy claim to be split for purposes of trial.  Under defendants' theory, the state court would try and decide the federal conspiracy claim against the State of Indiana and its Department of Revenue, and the federal court would try and decide the identical federal conspiracy claim against Albrecht in his individual capacity, as well as against Schmitt, the City, and Melching.

Judge Johnson recognized this problem.  He urged defendants to seek clarification from this court before the state court trial.  They did not do so.  Judge Johnson then treated the conspiracy claim as one unitary claim.  He tried that claim as to all defendants against whom the plaintiffs were still seeking relief.

Judge Johnson's jurisdictional decision had ample basis, and this court believes it was the correct decision.  First, the conspiracy claim in Count Five was pled broadly as arising under both federal and state law.  The complaint generally alleged that the parties conspired to commit all the alleged wrongs, including both federal and state law claims.  There was nothing to indicate that the conspiracy claim was brought only pursuant to any specific federal law.  "[A] state law conspiracy to violate a federal law raises an insufficient federal question to support federal jurisdiction over the claim." *Bhagwanani v. Howard Univ.*, 355 F.

Supp. 2d 294, 302 (D.D.C. 2005) (collecting cases).   At the same time, a conspiracy to commit a state law tort can support a claim for damages under Indiana law.  *Goetzke v. Ferro Corp.*, 280 F.3d 766, 777 n.9 (7th Cir. 2002), citing *Huntington Mortgage Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. App. 1998); see also *Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626, 628 (Ind. 1966).  The remand order specifically remanded all state law claims.  Because the conspiracy claim arose at least in part under state law, it was explicitly within the Marion Superior Court's jurisdiction under the remand order.

Second, a conspiracy claim by its nature cannot easily be split, and in light of the blend of State and local defendants and federal and state law claims, the state court was the better forum for its adjudication, where the court could exercise jurisdiction over all parties.  A conspiracy claim requires multiple parties acting in concert to accomplish an unlawful purpose.  See *Goetzke v. Ferro Corp.*, 280 F.3d at 777, citing *Huntington Mortgage Co. v. DeBrota*, 703 N.E.2d at 168.  Because the conspiracy claim required evidence that the defendants were acting in concert, plaintiffs could not prove that Albrecht conspired with Schmitt without simultaneously showing that Schmitt conspired with Albrecht.  Thus, the federal conspiracy claims contained in Count Five, as it stood at the time of remand, with all defendants still in the case, would need to be tried in their entirety in state court or federal court.  Because this court could not assert jurisdiction over the State of Indiana and its Department of Revenue after they invoked Eleventh Amendment immunity, the state court was the only forum where this claim could

have been tried in its entirety.  The remand order stayed the federal action, stating that "the center of gravity in this dispute will be in the state courts." Judge Johnson reasonably concluded that he wo1uld have risked a substantial waste of time by attempting to try only half of the alleged conspiracy.

Schmitt and the City argue that they have a right to have the federal claims against them tried and decided in the federal courts.  That is true in general, but it is not an absolute right.  For example, if this case had been filed in a state court after *Lapides* was decided, the State defendants could have refused to consent to removal, thus preventing Schmitt and the City of Warsaw from removing to federal court. See *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S.at 393 (Kennedy, J., concurring).  Similarly, where there are parallel claims in federal and state courts, there is no absolute right to have the claims tried in a particular order, so that the first trial will preclude a second trial of the same factual and legal issues.  See, *e.g.*, *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 852 (7th Cir. 2002).  The state courts have concurrent jurisdiction over the federal claims against Schmitt, the City, and Melching.  This court sees no reason to embrace a legal rule that would require multiple trials in a relatively complex case like this one.

One further complication here is that plaintiffs agreed in the state court to dismiss their federal claims against the State of Indiana and its Department of Revenue in 2004, long before the trial in 2006.  See Pl. Reply Br., Ex. B at 4.

-17-

Under Schmitt's and the City's theory, at that time the federal conspiracy claim again became removable to federal court. That is, the only remaining defendants were Albrecht in his individual capacity, who was not entitled to Eleventh Amendment immunity, plus Schmitt, the City of Warsaw, and Melching. The Eleventh Amendment was no longer a bar to federal jurisdiction, and a second removal petition would have been in order.

The court finds that the dismissal of the claims against the State of Indiana and its Department of Revenue did not undermine the state court's jurisdiction over the federal conspiracy claim, at least in the absence of a new removal petition. The state court properly determined that it had jurisdiction over the indivisible federal conspiracy claims based upon this court's original remand order. To deprive the state court of continued jurisdiction once it had properly vested, a further removal petition would have been needed.

For these reasons, this court concludes that Judge Johnson acted consistently with this court's order of remand. Even if this court were inclined to disagree, however, defendants Schmitt and the City waived objections to the state court's exercise of jurisdiction by failing to take available steps before the trial in the state court. They had several available avenues for resolving the issue.

First, these defendants argue that this action was removable under 28 U.S.C. § 1443 as a federal civil rights action, though their removal petition did

-18-

not actually cite Section 1443.  Assuming defendants are correct on this point, the statutory bar on appellate review of remand orders does not apply to cases removed pursuant to Section 1443.  See 28 U.S.C. § 1447(d).  They therefore could have sought appellate review of this court's order of partial remand.  They did not.

Second, these defendants could have filed a second removal petition.  A second removal petition is allowed if, over the course of the pleadings, circumstances change that make defendants believe claims are no longer properly in state court.  See *Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 782-83 (7th Cir. 1999).  At the time of the remand, the conspiracy claim included as defendants Albrecht in an official capacity and the State of Indiana and its Department of Revenue, who were all asserting Eleventh Amendment immunity to federal jurisdiction.  At that point, the conspiracy claim could not be tried in this court, so it was properly remanded to state court.  On April 12, 2004, two and one-half years after the remand order, the Orbans consented to dismiss their federal claims against the State of Indiana and the Indiana Department of Revenue.  Once these claims were dropped, no defendants in the conspiracy count could raise an Eleventh Amendment immunity defense in federal court.

By going forward with the litigation in state court, the defendants waived this right to remove the action a second time.  See *Integra Bank, N.A. v. Greer*, 2003 WL 21544260, at *3 (S.D. Ind. June 26, 2003) (Barker, J.) (finding defendant waived removal when he "filed his counterclaim to Plaintiff's complaint and then

proceeded to an adjudication on the merits of the case in state court" because the right to remove the case to federal court is waived once "there has been significant progress on the merits"); *Fate v. Buckeye State Mut. Ins. Co.*, 174 F. Supp. 2d 876, 880-82 (N.D. Ind. 2001) (discussing history of waiver).

Third, the defendants could have asked this court to clarify its order of remand. This court is aware of no bar to such a procedure. In fact, the record before this court shows that Judge Johnson urged Schmitt and the City to seek just such a clarification before the trial. Pl. Reply Br., Ex. C at 28-32. They elected not to do so. Instead, these defendants chose to go forward in the hope that, if they won in state court, they could try to use *res judicata* or collateral estoppel defensively to prevail in the federal court. It appears that these defendants also wanted, in case they lost in state court, to preserve their option of arguing here that the state court had no jurisdiction. The parallel federal and state court systems do not need to countenance such tactics, especially since the state courts have every right to exercise concurrent jurisdiction over federal claims asserted under 42 U.S.C. § 1983.

Fourth, Schmitt and the City could have sought an injunction from this court to stop the state court from proceeding on claims as to which they believed this court retained jurisdiction. The federal Anti-Injunction Act, 28 U.S.C. § 2283, allows federal courts to enjoin state court proceedings "where such action is necessary in aid of the federal court's jurisdiction." *Federal Sav. & Loan Ins.*

*Corp. v. PSL Realty Co.*, 482 F. Supp. 74, 77 (S.D. Ill. 1979); see *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970) ("[S]ome federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.").

The Supreme Court has specifically listed "removal of litigation from state to federal courts" as one instance where federal courts may "enjoin state court proceedings, despite the anti-injunction statute." *Mitchum v. Foster*, 407 U.S. 225, 234 (U.S. 1972); see also *Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987) ("It is thus clear that a federal court may enjoin the continued prosecution of the same case in state court after its removal."), citing *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 640 (1977); *Frith v. Blazon-Flexible Flyer, Inc.*, 512 F.2d 899, 901 (5th Cir. 1975) (explaining that federal court may enjoin a second state court suit filed in attempt to subvert removal).  If the defendants felt that Judge Johnson was proceeding to try claims that had not been remanded to his court, they could have sought relief here.  Section 2283 would have allowed this court to enjoin the state court action if it agreed that the Marion Superior Court had misinterpreted the remand order and was infringing on this court's jurisdiction.  See *PSL Realty Co.*, 482 F. Supp. at 77.

At this time, however, after the state court trial, the opportunity for injunctive relief has passed.  Once a state court has made a final judgment, "then

the Full Faith and Credit Act becomes applicable and federal courts must turn to state law to determine the preclusive effect of the state court's decision," and can no longer use Section 2283 to interfere with the state court's judgment. See *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518 (1986).

The opportunity for the defendants to question the state court's jurisdiction over specific claims has come and gone. Because state courts have concurrent original jurisdiction over Section 1983 claims, any procedural errors regarding jurisdiction are waivable. See *Cogdell v. Wyeth*, 366 F.3d 1245, 1247-49 (11th Cir. 2004) (explaining that subject matter jurisdiction is not waivable while procedural defects are waivable); *Baris v. Sulpicio Lines*, 932 F.2d 1540, 1543-44 (5th Cir. 1991) (differentiating between lack of original subject matter jurisdiction, which is not waivable, and lack of removal jurisdiction, which is waivable). By participating in the state court trial, the defendants waived their opportunity to have the remand order clarified.

In addition, from the perspective of this federal court, defendants Schmitt and the City already had an opportunity to litigate in state court the question of subject-matter jurisdiction. They may not "reopen that question in a collateral attack upon an adverse judgment." *Insurance Corp. of Ireland v. Compagnie des Bauxites d'Guinee*, 456 U.S. 694, 702 n.9 (1982). Judge Johnson's decision that the conspiracy claim was under his jurisdiction was proper. All elements of *res judicata* are met, so the Marion Superior Court's judgment binds this court to find

that Schmitt conspired with Albrecht and Melching to violate the Orbans' federal constitutional rights.

Even if this court were inclined to disagree with Judge Johnson on these matters, he had the jurisdiction to determine his own jurisdiction, and his interpretation of the remand order is binding on this court regardless of whether this court would agree. See *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 706 (1982) (discussing the Supreme Court's long-standing recognition "that the principles of *res judicata* apply to questions of jurisdiction as well as to other issues"). Even if the jurisdictional finding were erroneous, it could not be attacked collaterally but must be reviewed via the normal appellate process, in this case through the Indiana appellate courts. See *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 377 (1940) ("The court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is *res judicata* in a collateral action.").

This court could disregard Judge Johnson's findings only if the lack of jurisdiction were egregious and lacked any arguable basis. See *Disher v. Information Resourses, Inc.*, 873 F.2d 136, 140 (7th Cir. 1989); see also *Wendt v. Leonard*, 431 F.3d 410, 412-13 (4th Cir. 2005) (collecting cases and stating that a judgment can be void due to lack of jurisdiction only if the prior court clearly usurped power and had no arguable basis for finding that it had jurisdiction). The

facts here do not come close to meeting that standard.  For each of these reasons, then, this court finds that the Marion Superior Court did not act beyond its jurisdiction in trying the case in 2006.

C.     *Schmitt is Liable for Albrecht's Wrongdoing*

As discussed above, the state court found that defendants Schmitt, Melching, and Albrecht conspired to violate plaintiffs' rights.  The Orbans argue that finding requires this court, based on collateral estoppel, to hold that Schmitt is jointly and severally liable for the actions of his co-conspirators taken in furtherance of that conspiracy, including federal constitutional violations committed by Albrecht individually.

The law in Indiana is clear.  Joint tortfeasors are jointly and severally liable for damages.  "If there is a conspiracy to commit a tort, each one engaged in the conspiracy is liable for the act of the other done in pursuance thereof as well as the acts in which he participated."  *Baker v. State Bank of Akron*, 44 N.E.2d 257, 260, 112 Ind. App. 612, 619 (Ind. App. 1942).  "[T]here is no cause of action for conspiracy as such. The cause of action is for damage resulting from a conspiracy."  *Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626, 628 (Ind. 1966); accord*, Goetzke v. Ferro Corp.*, 280 F.3d 766, 777 n.9 (7th Cir. 2002), citing *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. App. 1998); *Bacompt Sys. v. Peck*, 2007 WL 854020, at *2 (S.D. Ind. Mar. 05, 2007).

The Marion Superior Court jury was instructed on this law. Jury Instruction 23 stated that "where there is a conspiracy to commit a tort, each one engaged in the conspiracy is liable for the acts of the other done in pursuit thereof." The instruction continued: "Where conspiracy has been established, all of the conspirators are equally liable as joint tortfeasors for acts done in pursuance of the conspiracy by any one or more of the conspirators." The finding by the Marion Superior Court jury that Schmitt conspired with Albrecht to violate plaintiffs' constitutional rights means that Schmitt is jointly and severally liable for damages resulting from Albrecht's individual wrongdoing also found by the Marion Superior Court. Collateral estoppel precludes re-examining this issue.

D.    *The City of Warsaw*

This conclusion does not apply to the federal claims against the City of Warsaw. For those claims, the City is not automatically liable for any wrongdoing by Schmitt. Under Section 1983, the doctrine of *respondeat superior* does not apply to municipal governments. To recover from the city government itself, the plaintiffs must show that their injuries were caused by an unconstitutional municipal policy, custom, or practice having the practical force of law. *Monell v. Department of Social Services*, 436 U.S. 658, 690-93 (1978). This court does not find in this record any indication that the municipal liability issue was resolved in the state court. Accordingly, the court cannot yet resolve the federal claim against the City of Warsaw. In addition, the record before this court indicates that plaintiffs might have agreed to some form of dismissal of their Section 1983 claims

against the City in state court.  See Pl. Reply Br., Ex. B at 4.  Without further clarification of this situation, this court cannot rule against the City under federal law, and it may be that the City is entitled to judgment in its favor on those claims.

E.    *Determination of the Amount of Damages*

The Marion Superior Court determined that Albrecht's constitutional violations caused plaintiffs damages in the amount of $1,575,000.  The Orbans argue that this damage finding binds this court due to collateral estoppel, which, in combination with the conspiracy liability discussed above, makes Schmitt jointly liable for damages in the amount of $1,575,000.

The City and Schmitt argue that collateral estoppel is not appropriate because they did not fully litigate the issue of damages.  They argue that the jury instructions advised the jury that they could not decide on Schmitt's Section 1983 damages.  They claim that because the jury could not decide the issue of their Section 1983 liability, they "had essentially no incentive to actually defend that issue in the state court," and thus were not truly party to the issue.

This court disagrees and finds that defendants Schmitt and the City had a full opportunity to litigate this issue in state court.  First, as discussed above, the law on conspirator liability is clear.  Schmitt knew or should have known that an adverse finding on the conspiracy would make him liable for all damages resulting

from Albrecht's individual actions.  Jury Instruction 23, which instructed the jury on this law, made it clear that a plaintiffs' verdict on the conspiracy claim would result in holding Schmitt liable for damages from Albrecht's actions.  Liability resulting from the adverse findings could not be a surprise.

Even if Schmitt truly thought he had no incentive to defend the conspiracy claim, that belief would not insulate him from the effects of preclusion.  Schmitt's "failure to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy."  *Welch v. Johnson*, 907 F.2d 714, 725 (7th Cir. 1990), quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 485 (1982) (internal quotations omitted).  Defendant Schmitt may not have litigated the issue fully, but he had a full opportunity to do so.

Finally, the argument that Schmitt "had essentially no incentive to actually defend that issue in the state court" is both wrong and belied by his participation in the trial.  The defendants do not contest the Orbans' assertion that Schmitt was a central part of the state court defense.  Judge Johnson's findings on the attorney fee issue pursuant to Section 1988 also shows that Judge Johnson also considered Schmitt and the City defendants in the state court proceedings.  The amount of damages was fully litigated, and the City and Schmitt were parties to that action.  This court is bound due to collateral estoppel to find that the amount of damages caused by Albrecht's Section 1983 violation is $1,575,000.

In summary, the Marion Superior Court findings bind this court to find that (1) Schmitt conspired with Albrecht to commit Section 1983 violations; (2) Schmitt is liable for the resulting damages from individual actions in pursuance of that conspiracy, which includes Albrecht's Section 1983 violations; and (3) Albrecht's Section 1983 violations caused $1,575,000 in damages. This court will not yet enter judgment against Schmitt at this time, however, because the issue of municipal liability remains to be addressed, and there is no basis for a separate partial judgment under Rule 54(b) of the Federal Rules of Civil Procedure.

F.    *Section 1988 Attorney Fees and Costs*

Judge Johnson held that: (1) the finding of conspiracy makes all liable defendants jointly and severally liable for Section 1988 costs and attorney fees; (2) the amount of costs and attorney fees is $685,000; and (3) while the determination of liability and amount of fees and costs was properly in state court, entry of judgment on attorney fees and costs against Schmitt and/or the City would be subject to the jurisdiction of this court. The record before this court does not include any explicit holding or finding by the state court that the City is liable for fees and costs under Section 1988. The Marion Superior Court's Order on Attorneys' Fees repeatedly referred to the possibility of entering judgment against "the City of Warsaw and/or R. Paul Schmitt."

This court finds that the state court's findings collaterally estop this court from determining different results, apart from the issue of the City's liability under

Section 1983. As with the merits of the claims discussed above, Judge Johnson had jurisdiction to determine his jurisdiction over the matters of attorney fees and costs, and that finding is binding on this court. Both Schmitt and the City also had both the motivation and opportunity to litigate the issue.

Because each element of collateral estoppel is satisfied as to Schmitt, the state court's judgment is "binding on the parties as to every question decided." *Starzenski*, 87 F.3d at 878. Therefore this court holds that (1) it has jurisdiction to enter judgment against Schmitt for costs and attorney fees pursuant to Section 1988; (2) the finding of conspiracy makes Schmitt jointly and severally liable with Albrecht for Section 1988 costs and fees; and (3) the amount of costs and attorneys' fees is $685,000. At an appropriate time, this court will enter judgment against Schmitt in the amount of $685,000 for attorneys' fees and costs pursuant to Section 1988, in addition to any post-judgment fees and costs to be determined at a subsequent hearing.

III.   *Other Issues*

Other issues remain pending before this court, including a Section 1983 claim against only defendant Schmitt in his individual capacity. The Orbans have stipulated that if this court gives preclusive effect to the Marion Superior Court judgments, and the state appeals process renders those judgments final, all pending claims before this court should be dismissed; however, if the state courts overturn the relevant Marion Superior Court judgments, they will ask this court

to take appropriate steps to resolve the remaining claims.  That question will await the outcome of the state court appeal.

*Conclusion*

This case presents tangled questions about the interplay between state and federal courts and state and federal law.  This court and Judge Johnson have attempted to balance the law and each party's rights to find a fair and non-wasteful solution to a difficult procedural puzzle.  The defendants litigated their defenses in a court of competent jurisdiction and lost.  To give defendants an opportunity to re-visit those findings in this court would go against the basic principles of finality, the Full Faith and Credit Clause of Article IV of the Constitution, and fundamental fairness.

Defendants' motion for change of venue is denied.  This court finds that Schmitt conspired with Melching and Albrecht to violate the Orbans' federal constitutional rights, that the amount of damages the conspiracy caused is $1,575,000, and that Schmitt is liable for those damages.  Schmitt is also liable for plaintiffs' attorney fees and litigation costs in the amount of $685,000 pursuant to 42 U.S.C. § 1988.  The court will not enter judgment against Schmitt at this time, however, because the claims against the City remain for further proceedings.

So ordered.

Date: June 8, 2007

_David F. Hamilton_
_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

James R. Fisher
MILLER & FISHER LLC
fisher@millerfisher.com

John H. Lewis
LEWIS & WILKINS PC
lewis@lewisandwilkins.com

Robert F. Parker
BURKE COSTANZA & CUPPY LLP
parker@bcclegal.com

Andrew L. Teel
STEELE ULLMSCHNEIDER & MALLOY LLP
teel@sum-law.com

Mark Daniel Ulmschneider
STEELE ULLMSCHNEIDER & MALLOY LLP
ulmschneider@sum-law.com

Robert B. Wente
INDIANA STATE ATTORNEY GENERAL
robert.wente@atg.in.gov